Oladotun O. BADEWA, Petitioner

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

No. 06–2858.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Oct. 23, 2007.

Filed: Oct. 30, 2007.

Dennis Mulligan, Philadelphia, PA, for Petitioner.

Lyle D. Jentzer, Ada E. Bosque, United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before: SLOVITER, CHAGARES, and HARDIMAN, Circuit Judges.

OPINION OF THE COURT

CHAGARES, Circuit Judge.

Oladotun Oluwatobi Badewa petitions for review of a final order of removal issued by the Board of Immigration Appeals (BIA). The BIA concluded that Badewa's convictions under the District of Columbia Code's Youth Rehabilitation Act of 1985 (DCYRA) are criminal convictions under the Immigration and Nationality Act (INA) and denied Badewa's application for deferral of removal under the Convention Against Torture (CAT). We agree with the BIA that Badewa's sentence under the

DCYRA does not correspond to an adjudication of juvenile delinquency under the Federal Juvenile Delinquency Act (FJDA) and find that substantial evidence supports the BIA's denial of deferral of removal. Therefore, we will deny the petition for review.

## I.

As we write only for the parties, our summary of the facts is brief. Petitioner Oladotun Oluwatobi Badewa is a Nigerian citizen who came to the United States as an infant. As the child of a United States citizen, Badewa gained legal permanent resident status. In November 2000, at the age of 21, Badewa pled guilty and was convicted in the Superior Court of the District of Columbia of assault with a dangerous weapon and carrying a pistol without a license, for which he received concurrent sentences of six and five years. The Superior Court's adjudication was under the DCYRA, and the Court recommended vocational training, substance abuse counseling, and GED training for Badewa. Upon his release from detention in April 2005, the government initiated removal proceedings. Badewa asserted that his conviction under a D.C. youth rehabilitation statute corresponds to an adjudication of juvenile delinquency under the FJDA, and is not a "conviction" as defined in immigration law. The Immigration Judge (IJ) rejected this argument and found Badewa subject to removal, but granted his request for deferral of removal under the CAT. On February 3, 2006, the BIA dismissed Badewa's appeal with regard to the lack of a "conviction" argument, reversed the IJ's deferral grant, and ordered Badewa removed. This appeal followed.

## II.

We have jurisdiction to review the BIA's final orders of removal. 8 U.S.C. § 1252(a). Specifically, 8 U.S.C. § 1252(a)(2)(D), *amended by* REAL ID Act of 2005, Pub.L. No. 109–13, 119 Stat. 231, grants this Court jurisdiction to review all questions of law raised upon a properly filed petition for review, notwithstanding the criminal alien bar in § 1252(a)(2)(C). Section 1252(a)(4) provides this Court with exclusive jurisdiction over claims under the CAT. 8 U.S.C. § 1252(a)(4).

We review legal decisions of the BIA *de novo*, but afford deference to the BIA's reasonable interpretation of statutes which it is charged with administering. *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Francois v. Gonzales*, 448 F.3d 645, 648 (3d Cir.2006). The BIA's determinations regarding the likelihood of future persecution or torture are reviewed for substantial evidence. *See Wang v. Ashcroft*, 368 F.3d 347, 349–50 (3d Cir.2004); *Abdille v. Ashcroft*, 242 F.3d 477, 483–84 (3d Cir.2001). Under this standard, "the BIA's findings must be upheld unless the evidence not only supports a contrary conclusion, but compels it." *Abdille*, 242 F.3d at 483–84.

Venue is proper in this Court because the proceedings before the IJ were completed in York, Pennsylvania. 8 U.S.C. § 1252(b)(2).

## III.

### 1.

█ Badewa first asserts that his conviction under the DCYRA corresponds to an adjudication of juvenile delinquency under the FJDA and is not a "conviction" as defined in immigration law. Therefore, he argues, he should not be subject to removal.

Any alien convicted of an aggravated felony or firearm offense is subject to removal from the United States. 8 U.S.C. §§ 1227(a)(2)(A)(iii), (C). The INA defines

"conviction" as "a formal judgment of guilt." *Id.* § 1101(a)(48)(A). A conviction is found where the alien in question "entered a plea of guilty," as Badewa did to the assault and firearm charges, and the court imposed "some form of punishment, penalty, or restraint on the alien's liberty," such as Badewa's sentence. *Id.* §§ 1101(a)(48)(A)(i), (ii). The BIA does not, however, consider juvenile delinquency adjudications as criminal convictions under 8 U.S.C. § 1101(a)(48)(B). *See, e.g., Matter of Devison,* 22 I. & N. Dec. 1362, 1369 (BIA 2000). While deferred adjudications, such as expungements under state rehabilitative statutes, qualify as convictions for immigration purposes, *see Matter of Roldan,* 22 I. & N. Dec. 512, 523 (BIA 1999)[1], delinquency findings do not, since they designate the offender with a particular status that cannot be revoked. To determine whether a juvenile proceeding results in a criminal conviction or civil delinquency adjudication, the BIA compares the judgment in question with adjudications under the FJDA. *Devison,* 22 I. & N. Dec. at 1365. Juvenile delinquency proceedings under the FJDA are civil, not criminal, adjudications.

In *Devison,* the BIA examined an adjudication under a New York youthful offender statute and found the procedures "similar in nature and purpose to the juvenile delinquency provisions contained in the FJDA." *Id.* at 1366. The state statute at issue specified that a youthful offender adjudication is not a judgment of conviction for a crime or any other offense. Under New York law, a court first determines whether a youth is "eligible" and then proceeds to the more specific decision of whether the eligible youth should receive youthful offender treatment. If such

treatment is granted, the court must immediately vacate the conviction and substitute a youthful offender finding. The youthful offender is then sentenced, and his or her subsequent behavior cannot change these decisions. *Id.* at 1366–67. The BIA stressed that both the FJDA and New York's state statute "apply similar definitions of youths and juveniles;" "specify that neither a youthful offender adjudication nor a determination of juvenile delinquency constitutes a conviction;" and "consider similar criteria to determine whether an offender will be treated as a juvenile or as an adult." *Id.* at 1367–68. Under New York's procedures, however, the state court first convicts an offender and then adjudicates his or her status, whereas under federal procedures, an offender's status is determined before initiation of delinquency proceedings or criminal prosecution. The BIA did not find this difference determinative because, under New York's procedures, "a conviction precedent to a youthful offender adjudication is vacated, rendering it a nullity. All that is left, as in the federal system, is a civil determination of status, which may not be treated as a conviction under governing law." *Id.* at 1368 (citation omitted). Therefore, the BIA found the New York process to be sufficiently analogous to the FJDA's procedures and terminated removal proceedings.

On the other hand, in *Uritsky v. Gonzales,* 399 F.3d 728 (6th Cir.2005), the Court of Appeals for the Sixth Circuit held that the grant of youthful trainee status under Michigan's Youthful Trainee Act (YTA) qualified as a conviction for immigration purposes. Under Michigan law, a court can assign the status of "youthful trainee" to a suitable individual who pleads

---

1. This Court has held that, for purposes of the INA, "conviction" includes a plea of nolo contendere to a state law drug charge subsequently dismissed without a verdict after completion of probation under a state rehabilitation statute. *Acosta v. Ashcroft,* 341 F.3d 218, 222 (3d Cir.2003).

guilty to a criminal offense without entering a judgment of conviction. Once the youthful trainee completes his or her probation or sentence, the court dismisses the proceedings. Like the New York statute in question in *Devison,* the YTA "deal[s] with the same age group, reflect[s] a similar legislative intent to give young offenders a second chance to avoid the stigma of criminal conviction, and promote[s] rehabilitation over punishment." 399 F.3d at 734. Unlike New York's procedures, however, Michigan law allows a judge to revoke the youthful trainee status at any time; thus, vacation of the conviction is not complete until an individual completes his or her probation or sentence. *Id.* at 730–31. Therefore, the Court declared the Michigan youthful offender scheme more analogous to a rehabilitative expungement than an adjudication of juvenile delinquency under the FJDA.

The DCYRA more strongly resembles Michigan's YTA than New York's youthful offender law. The statute's definition of "conviction" includes a guilty plea, D.C.Code § 24–901 (2001), and the Court of Appeals for the District of Columbia Circuit has characterized its process as a "set aside" not even reaching the level of expungement. *United States v. McDonald,* 991 F.2d 866, 871 (D.C.Cir.1993). In *McDonald,* the court explained that the DCYRA "requires the local courts to set aside juvenile convictions, not because of legal error or the juvenile's innocence, but because the juvenile's post-offense conduct has persuaded the court to terminate his sentence." *Id.* An offender's original sentence may be reimposed if he or she fails to satisfy parole or sentence conditions, and an earlier "set aside" conviction may be considered for sentencing purposes in future criminal proceedings. *Id.* at 872. The DCYRA does not convert a criminal conviction into a legal nullity or result in the adjudication of a non-criminal status. Therefore, we agree with the BIA that

Badewa's convictions under the DCYRA are criminal convictions for immigration purposes. Having been found guilty and sentenced, Badewa is subject to removal as a criminal alien.

## 2.

Badewa also argues that the BIA utilized an improper standard of review when examining the IJ's grant of deferral of removal, and he maintains that the BIA's removal decision is not supported by substantial evidence. Badewa contends that if he is deported he will be jailed and badly mistreated by Nigerian prison officials. He cites the torture and mistreatment of other detainees in Nigeria as support for his CAT protection petition.

Badewa asserts that the BIA engaged in a substantial evidence review of the IJ's CAT protection decision instead of the appropriate review for clear error. *See* 8 C.F.R. § 1003.1(d)(3)(i). In support of this argument, he cites the BIA's statement that "[w]e find no substantial evidence in the record for the [IJ's] conclusion that the respondent is likely to be detained by the Nigerian authorities upon his return or, if he is detained, that he will more likely than not be tortured." Petitioner's Br. at 23. What the BIA's decision actually stated, however, is "We find no substantial *basis* in the record for the [IJ's] conclusion...." Appendix (App.) 4 (emphasis added). Moreover, under the appropriate standard of review, "[f]actual findings are clearly erroneous if the findings are unsupported by substantial evidence." *United States v. Roman,* 121 F.3d 136, 140 (3d Cir.1997) (quotation marks and citation omitted). That the IJ's factual findings were unsupported by substantial evidence bolstered the BIA's decision to reverse, and we decline to find the BIA's review improper.

Accordingly, we review the BIA's denial of deferral of removal under the substantial evidence standard. The CAT applies to torture that "is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1). The BIA concluded that Badewa failed to demonstrate that it is more likely than not that the Nigerian government will detain and torture him if he returns, and we find that the record does not compel a contrary conclusion.

Badewa first argues that he will more likely than not be detained by the Nigerian government upon his return under Nigeria's National Drug Law Enforcement Agency Decree Number 33 ("Decree 33"), an act targeting Nigerian nationals convicted abroad of drug-related crimes. He then cites the general mistreatment of detainees by Nigerian authorities to establish the probability of torture. The BIA determined that Badewa does not fall within the terms of Decree 33 because he has not been convicted of any drug-related crime; thus, the Board did not reach the proof of a probability of torture requirement, although it did note that "substandard prison conditions do not constitute torture." App. 5. Given the lack of authenticated record evidence demonstrating the current enforcement of Decree 33 and its application to deportees without drug convictions, the BIA had substantial grounds to find Badewa not likely to be detained. In any case, Badewa also fails to make the necessary probability of torture showing. He does not allege past torture or mistreatment directed specifically at him, but rather claims general deplorable prison conditions and mistreatment of Nigerian detainees. These generalized allegations of harsh prison conditions do not rise to the level of "torture." "[C]onditions of confinement, without more, do not constitute torture under the CAT." *Francois v. Gonzales*, 448 F.3d

645, 652 (3d Cir.2006). Badewa has not shown that Nigerian authorities maintain such conditions with the specific intent to inflict severe pain and suffering. *See Auguste v. Ridge*, 395 F.3d 123, 153–54 (3d Cir.2005). Therefore, we will deny Badewa's petition for review of the BIA's denial of his request for CAT protection.

## IV.

For the foregoing reasons, we will deny the petition for review.