**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2675
_____

BULENT GUL
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A99 310 604)
Immigration Judge:  Honorable Eugene Pugliese

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 23, 2010

Before: SLOVITER, JORDAN and GREENBERG, Circuit Judges

(Opinion filed: June 30, 2010)
_____

OPINION
_____

PER CURIAM

Bulent Gul, a citizen of Turkey, entered the United States on October 29, 2000, as

a non-immigrant in transit, with authorization to remain until November 8, 2000.  In

December 2005, Gul married a United States citizen, whose Petition for Alien Relative

(Form I-130) was later approved by the U.S. Customs and Immigration Service ("USCIS"). In March 2006, Gul applied for adjustment of status based on his marriage. See Immigration and Nationality Act ("INA") § 245(a) [8 U.S.C. § 1255(a)]. The USCIS denied Gul's application, finding that he was inadmissible for permanent residence. In particular, the USCIS concluded there was reason to believe that Gul had been an illicit trafficker in a controlled substance because he had been charged in 2005 with various drug offenses in New Jersey. See INA § 212(a)(2)(C)(i) [8 U.S.C. § 1182(a)(2)(C)(i)]. The majority of the state drug charges were dismissed, but, in February 2006, Gul pleaded guilty in New Jersey Superior Court to the disorderly persons offense of loitering for the purpose of obtaining or distributing a controlled dangerous substance. See N.J. Stat. Ann. § 2C:33-2.1(b).

In April 2007, the Government charged Gul with removability under INA § 237(a)(1)(B) [8 U.S.C. § 1227(a)(1)(B)], as an alien who had overstayed his authorized admission period. The Government later charged Gul with being removable under INA § 237(a)(1)(A) [8 U.S.C. § 1227(a)(1)(A)], as an alien who, at the time of adjustment of status, was inadmissible because he had been convicted of a crime "relating to a controlled substance (as defined in section 802 of Title 21)."[1] INA § 212(a)(2)(A)(i)(II) [8 U.S.C. § 1182(a)(2)(A)(i)(II)]. Gul admitted that he had overstayed his period of

---

[1] The Government initially alleged that Gul was removable as an illicit drug trafficker, see INA § 212(a)(2)(C)(i), but later withdrew that charge.

admission, but denied that he was removable or inadmissible under INA § 212(a)(2)(A)(i)(II). The Immigration Judge ("IJ") rejected Gul's arguments, denied his renewed application for adjustment of status, and ordered him removed to Turkey. Gul appealed to the Board of Immigration Appeals ("BIA").

The BIA concluded that INA § 212(a)(2)(A)(i)(II) could not provide a basis for Gul's removablity, but that it did render him inadmissible and, consequently, ineligible to adjust his status. That provision states in relevant part:

> [A]ny alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of . . . a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), is inadmissible.

INA § 212(a)(2)(A)(i)(II). An alien who satisfies these criteria "at the time of entry or adjustment of status" is also removable. See INA § 237(a)(1)(A). With respect to removability, the BIA held that it was "unable to determine to any degree of certainty whether the controlled substances contained in New Jersey's Dangerous Substances Control Law are the same substances contained in section 102 of the Controlled Substances Act." In the context of inadmissibility, however, the Board held that "[e]ven if the New Jersey Statutes cover some substances that are not contained in section 102 of the Controlled Substances Act, [Gul] . . . has failed to meet his burden of proving that the admittedly 'illegal substance' for which he was convicted was not a controlled substance under 21 U.S.C. § 802." Gul filed a timely petition for review.

3

We have jurisdiction pursuant to INA § 242 [8 U.S.C. § 1252]. Whether a petitioner is eligible for adjustment of status "is a purely legal question" which we review de novo. Pinho v. Gonzales, 432 F.3d 193, 204 (3d Cir. 2005); Kamara v. Att'y Gen., 420 F.3d 202, 211 (3d Cir. 2005). We owe deference to the BIA's construction of the INA because it is a statute that the agency is charged with administering. See Acosta v. Ashcroft, 341 F.3d 218, 222 (3d Cir. 2003). Nevertheless, we owe no deference to the BIA's interpretation of state criminal laws. See Santos v. Gonzales, 436 F.3d 323, 325 (2d Cir. 2006).

The state statute under which Gul was convicted provides:

A person, whether on foot or in a motor vehicle, commits a disorderly persons offense if (1) he wanders, remains or prowls in a public place with the purpose of unlawfully obtaining or distributing a controlled dangerous substance or controlled substance analog; and (2) engages in conduct that, under the circumstances, manifests a purpose to obtain or distribute a controlled dangerous substance or controlled substance analog.

N.J. Stat. Ann. § 2C:33-2.1(b). To determine whether a conviction under this law "relates to" a controlled substance defined in 21 U.S.C. § 802, we apply a categorical approach. See Taylor v. United States, 495 U.S. 575, 600-02 (1990); see also Mizrahi v. Gonzales, 492 F.3d 156, 159 (2d Cir. 2007) (noting that whether the "law or regulation" violated relates to controlled substances under § 212(a)(2)(A)(i)(II) "effectively demands a categorical identification of the applicable violations of law."). Under this approach, we may look only to the statutory definition of the offense, and may not consider the particular facts underlying a conviction. See Singh v. Ashcroft, 383 F.3d 144, 147-48 (3d

4

Cir. 2004). "[O]ur inquiry concludes when we determine whether the least culpable conduct sufficient to sustain conviction under the statute 'fits' within the requirements" of a controlled substance offense under § 212(a)(2)(A)(i)(II). Jean-Louis v. Att'y Gen., 582 F.3d 462, 470 (3d Cir. 2009).

Gul argues that his conviction under § 2C:33-2.1(b) cannot categorically qualify as an offense relating to a controlled substance because it "represents the kind of inchoate offense that has no federal analog in federal controlled substances offenses, and is not included in the list of inchoate offenses [(*i.e.*, attempt and conspiracy)] encompassed" within § 212(a)(2)(A)(i)(II). (Pet'r's Br. 2.) We conclude that these arguments are without merit.

Nothing in § 212(a)(2)(A)(i)(II) requires that the state offense have a federal analog to render an alien inadmissible. Rather, the offense need only involve a state law "relating to a controlled substance," and the substance must be one defined in the Controlled Substances Act ("CSA"). Furthermore, "Congress's use of the phrase 'relating to' in federal legislation generally signals its expansive intent." Mizrahi, 492 F.3d at 159 (citing Morales v. TWA, Inc., 504 U.S. 374, 383 (1992)). Here, "[t]he operative statutory phrase, 'relating to a controlled substance,' modifies 'law or regulation.'" Mielewczyk v. Holder, 575 F.3d 992, 994-95 (9th Cir. 2009). To "relate" means "'to show or establish a logical or causal connection between.'" Id. at 995 (quoting Webster's New International Dictionary 1916 (3d ed. 2002)). Thus, "if a law

5

defining an essential element of a crime relates to a controlled substance, the crime itself is a violation of law that renders an alien inadmissible under" § 212(a)(2)(A)(i)(II). Mizrahi, 492 F.3d at 159.

A conviction under § 2C-33-2.1(b) specifically includes a controlled substance element. As noted above, it requires "wander[ing], remain[ing] or prowl[ing]" in a public place with the purpose of unlawfully obtaining or distributing a controlled substance, as well as "engag[ing] in conduct" that manifests a purpose to obtain or distribute a controlled substance. This distinguishes Gul's case from those where laws prohibiting generic and inchoate conduct have been found not to relate to a controlled substance under the CSA, even if the underlying conduct clearly involved such a substance. See, e.g., Lara-Chacon v. Ashcroft, 345 F.3d 1148, 1154-56 (9th Cir. 2003) (holding that conviction under a statute that punished activities relating to "racketeering proceeds," which included but was not limited to proceeds from "prohibited drugs," was not an offense "relating to a controlled substance"); Coronado-Durazo v. INS, 123 F.3d 1322, 1325 (9th Cir. 1997) (noting that in Arizona "solicitation, a preparatory offense, is a separate and distinct offense from the underlying crime."); Castaneda De Esper v. INS, 557 F.2d 79, 83-84 (6th Cir. 1977) (concluding that conviction for misprision of a felony – in this case, conspiracy to possess heroin – did not relate to a controlled substance because the misprision statute could apply to concealment of non-drug related felonies); In re Batista-Hernandez, 21 I. & N. Dec. 955, 960 (BIA 1997) (refusing to find

6

conviction as an accessory after the fact for assisting a drug trafficker to be a conviction related to a controlled substance because, inter alia, "the crime of accessory after the fact has historically been treated as a crime separate and apart from the underlying crime."). Indeed, "the distinction between a generic solicitation statute or one specifically aimed at controlled substances is critical when our inquiry is whether the statute of conviction is a state law relating to controlled substances." Mielewczyk, 757 F.3d at 997. Thus, because an individual cannot be convicted of violating § 2C-33-2.1(b) if a controlled substance is not involved, we conclude that the law relates to a controlled substance.[2]

Gul further argues that his New Jersey conviction is not a crime because it is classified as a disorderly persons offense that "is specifically excluded from imposing any civil disability upon the person convicted." (Pet'r's Br. 13). See also N.J. Stat. Ann.

---

[2] Despite the BIA's assertion that it is not clear whether the New Jersey statute covers the same substances covered by the Controlled Substances Act, our review of the statutes reveals only three differences, none of which result in a legally significant difference between the New Jersey statute and the Controlled Substances Act. Compare 21 U.S.C. § 812, with N.J. Stat. Ann. §§ 24:21-5 through 24:21-8.1; see also 21 C.F.R. § 1308.13 (listing "Ketamine, its salts, isomers, and salts of isomers" as a Schedule III substance, thereby bringing Ketamine hydrochloride, the only substance listed in the New Jersey statute but not in the Controlled Substances Act, within the scope of the Controlled Substances Act). Thus, applying the categorical approach, Gul's conviction necessarily implicates the Controlled Substances Act, even though it is unclear from the record of conviction which particular substance underlies his offense. In light of that conclusion, we need not address the question of whether, had the statutes been different in a meaningful manner, Gul could have met his burden of proof. See Evanson v. Att'y Gen., 550 F.3d 284, 291 (3d Cir. 2008) (explaining that we only apply the modified categorical approach, rather than the formal categorical approach, when "[c]onfronted with a disjunctive statute of conviction ... .").

7

§ 2C:1-4(b) ("Disorderly persons offenses and petty disorderly persons offenses are petty offenses and are not crimes within the meaning of the Constitution of this State."). Notably, however, New Jersey's classification of an offense cannot dictate whether that offense renders an alien inadmissible under § 212(a)(2)(A)(i)(II). Cf. Acosta v. Ashcroft, 341 F.3d 218, 223 (3d Cir. 2003) (holding that state legislature cannot determine how the term "conviction" in the INA is to be construed). In addition, there is no merit to Gul's contention that his conviction does not fit within § 212(a)(2)(A)(i)(II) because it is "found among a series of disorderly persons offenses . . . rather than among the actual controlled substances offenses" under New Jersey law. (Pet'r's Br. 17). See Bhd. of R.R. Trainmen v. Balt. & Ohio R.R. Co., 331 U.S. 519, 528-29 (1947) (holding that "the title of a statute . . . cannot limit the plain meaning of the text.").

For the foregoing reasons, we will deny the petition for review.