Alexandru DUTCHIEVICI, Petitioner–Appellant,

v.

IMMIGRATION AND NATURAL-IZATION SERVICES, Respondent–Appellee.

No. 02–3104.

United States Court of Appeals, Sixth Circuit.

March 1, 2004.

William E. Bufalino, II, Clinton Township, MI, for Petitioner.

Donald A. Couvillon, Linda S. Wendtland, U.S. Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before DAUGHTREY and GILMAN, Circuit Judges, and HAYNES, District Judge.*

HAYNES, District Judge.

Petitioner, Alexandru Dutchievici, seeks review of the Board of Immigration Appeals ("BIA") order dismissing his appeal of the denial of Dutchievici's motion to reopen as well as the Immigration Judge's order setting aside the previous order to reopen. The Respondent, the Immigration and Naturalization Service ("INS"), moves to dismiss the petition for lack of jurisdiction under 8 U.S.C. § 1105a(c)[1] because Dutchievici was legally deported from the United States and that deportation constitutes a withdrawal of his administrative appeal under governing INS regulations.

To decide the Respondent's motion to dismiss, we first address whether the Petitioner's deportation was legally executed.[2]

* The Honorable William J. Haynes, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation.

1. Judicial review of this case is governed by the transition rules set forth at Section 309(c)(4) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3546 (Sept. 30, 1996) because Dutchievici's exclusion proceedings began in 1995 and the immigration judge issued a final decision in August 1997. According to these rules, the former Section 1105a(c) still applies in this case.

2. In *Juarez v. INS*, 732 F.2d 58, 59–60 (6th Cir.1984), this Court construed "departure" as used in Section 1105a(c) to mean a legally executed departure that does not violate due process. *See also, Estrada–Rosales v. INS*, 645 F.2d 819 (9th Cir.1981), (holding that a motion to reopen deportation proceedings must be granted where the conviction, upon which the deportation was based, has been overturned on the merits because a deporta-

Petitioner's three arguments to support a reversal of his deportation are: (1) his deportation from the United States did not foreclose his right of appeal; (2) since his state court conviction has been expunged, *nunc pro tunc*, that conviction cannot serve as a basis to deport him; and (3) his motion to reopen the proceedings and his motion for a stay should have been granted. The Respondent argues, in sum: (1) that an automatic stay was not required under the BIA Procedural Manual and the pertinent statute governing this petition; (2) that the expungement of Dutchievici's criminal conviction does not affect the validity of the INS proceedings because the expungement occurred after he was legally deported and was not a decision on the merits; and (3) that the Immigration Judge properly denied Dutchievici's motion to reopen because Dutchievici was never a lawful permanent United States citizen and is not statutorily eligible for Section § 212(c) relief.

For the reasons set forth below, we **GRANT** INS's motion to dismiss Dutchievici's petition on the ground that, as a matter of law, his deportation from the United States was consistent with INS statutes, regulations and applicable judicial precedent.

## I. BACKGROUND

Alexandru Dutchievici, a native and citizen of Romania, entered the United States in 1987 as a refugee under Section 207 of the Immigration and Nationality Act. Dutchievici married a United States citizen, but he never became a lawful permanent resident. On January 26, 1995, Dutchievici was convicted on a guilty plea of illegal possession of drugs in a Michigan state court for which he was sentenced to lifetime probation.

In July 1995, the Petitioner was refused admission while attempting to re-enter the United States at Detroit, Michigan. Based on the immigration inspector's interview of Dutchievici, the INS determined that because of his criminal conviction, Dutchievici was ineligible for admission into the United States. Shortly thereafter, the INS initiated exclusion proceedings charging Dutchievici with excludability under §§ 212(a)(2)(A)(I)(II) and 212(a)(2)(C) based upon his drug conviction.

On February 7, 1996, INS's charging document, along with a sworn statement and the conviction documents, were filed with the Immigration Court at Detroit. The record reflects that Dutchievici's hearing was set several times and was continued in August, 1996, March 1997 and June 1997. On May 20, 1997, Petitioner, with counsel, appeared at Immigration Court and elected to proceed in English. The proceeding, however, was continued to August 1997 at the Petitioner's request based on his pending state court motion to set aside his drug trafficking conviction.

On July 7, 1997, the Petitioner filed a motion to dismiss the exclusion proceedings, contending that his 1995 conviction was not final because of his pending motion to set aside his conviction. INS opposed this motion, asserting that Dutchievici's motion was a collateral attack that did not affect his conviction because a direct appeal could be taken only within 42 days of judgment. In INS's view, Dutchievici's motion to set aside was filed over two years after his conviction and, thus, his conviction was final under Michigan law. Dutchievici, however, insisted that his state-court motion was not a collateral attack, because he had sought a delayed direct appeal. The Immigration Judge

tion based upon an invalid conviction is not      "legally executed").

noted that because the state-court motion was not proffered and there was *not any showing* that the state court granted leave to file a direct appeal, the pending motion was deemed a collateral attack and without any legal effect on the immigration proceeding. Finding that Dutchievici had never become a lawful permanent resident and had committed a criminal offense, the Immigration Judge ordered him excluded and deported.

At the end of the exclusion proceeding, the Immigration Judge advised Dutchievici that his notice of appeal was due by September 11, 1997 and also noted that if the state court vacated his conviction, Dutchievici could seek a remand to consider whether he could apply for an adjustment of his status under Section 212(c). On September 15, 1997, Dutchievici filed a notice of appeal without attaching a supporting brief on the issue of the Immigration Judge's finding that his state-court motion was a collateral attack, not a direct appeal. On December 5, 1997, the BIA dismissed Dutchievici's appeal as untimely.

On January 14, 1008, Dutchievici filed a motion with the BIA requesting reconsideration of the dismissal because he allegedly mailed his notice of appeal in sufficient time for timely delivery by the United States Postal Service. The BIA also denied the motion to reconsider as untimely.

In March 2001, Dutchievici filed a petition for a writ of habeas corpus in the district court. In his petition, Dutchievici sought review of the legality of his immigration detention based upon his request for release from deportation detention under 8 U.S.C. § 1182(c) (1994). The district court denied his habeas petition because Dutchievici was not a lawful permanent resident, as required under the INS statute.

About three months later. Dutchievici, with new counsel, filed a "Special 212(c) Motion" with the Immigration Court, asking that the proceedings be reopened, citing the *Soriano* regulations[3] as allowing him to seek a Section 212(c) waiver of deportation. On July 9, 2001, the Immigration Court granted Dutchievici's motion to reopen. INS subsequently objected, citing the lack of proper service and arguing that Dutchievici was ineligible for relief under Section 212(c) because he was not a lawful permanent resident and, thus, his reliance on the *Soriano* regulations was misplaced. On August 16, 2001, the Immigration Judge set aside his prior order, but denied the motion to reopen because Dutchievici was legally ineligible for a Section 212(c) waiver.

On August 21, 2001, INS issued a deportation warrant for the Petitioner. On September 10, 2001, Dutchievici refused to cooperate with the authorities and would not board the airplane.

On September 17, 2001, Petitioner filed a notice of appeal from the denial to reopen, but did not ask the Board to stay its deportation order.

---

3. In *In re Soriano*, 21 I & N Dec. 516, 1996 WL 426888 (BIA 1996), the BIA held that section 440(d) of Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 1996 Pub. L. No. 104–132, 110 Stat. 1214, 1277 did not apply to aliens who had applied for Section 212(c) relief before AEDPA was enacted, including those who were already in deportation proceedings or who had already applied for section 212(c) relief at the time of AED-PA's enactment. In response to this decision, the federal register set forth a rule (referred to as the *"Soriano* regulations") that creates a uniform procedure for applying the law as enacted by AEDPA. This rule allows certain aliens in deportation proceedings that commenced before April 24, 1996, to apply for relief under section 212(c) of the Immigration and Nationality Act. As discussed*infra*, the *Soriano* regulations are inapplicable here.

On October 31, 2001. Dutchievici filed an emergency motion for a stay of deportation in the district court. On November 1, 2001. following a hearing on Dutchievici's emergency motion, the district court denied his request to stay his deportation. The following day Dutchievici was removed to Romania.

After Dutchievici's deportation, his attorney filed a motion with the BIA to extend the briefing schedule on his pending appeal. The request did not mention Dutchievici's deportation from the United States and the Board granted the extension.

On December 10, 2001, the state court expunged Dutchievici's drug conviction. *nunc pro tunc.* On December 14, 2001, the Petitioner filed an appeal with the BIA asserting that his deportation violated the automatic stay provision under BIA Practice Manual 6.2 and, based on the state court dismissal order, contending that he was now eligible for a Section 212(c) waiver. INS moved to dismiss Dutchievici's appeal of the Immigration Court's order denying his motion to reopen on the ground that he had been physically deported from the United States. The BIA order dismissed Dutchievici's appeal, stating that his departure constituted a withdrawal of his appeal and, thus, the initial decision of the Immigration Judge became final under 8 C.F.R. § 3.4 (2002). Dutchievici filed his petition for review in this Court on January 24, 2002.

## II. Legal Analysis

### A. Standard Review

We review the BIA's legal conclusions *de novo.* *INS v. Aguirre–Aguirre,* 526 U.S. 415, 424–25, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999). Yet "[i]f the intent of Congress is clear, that is the end of the matter, for the court, as well as the agency, must give effect to the unambiguously

expressed intent of Congress." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council. Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843.

### B. INS'S motion to dismiss

We first address INS's motion to dismiss Dutchievici's petition on the grounds that his actual deportation from the United States divests this Court of jurisdiction under 8 U.S.C. § 1105a(c). 8 U.S.C. § 1105a(c) states that an "order ... of exclusion shall not be reviewed in any court if the alien ... had departed from the United States after the issuance of the order." In *Juarez v. INS,* 732 F.2d 58, 59–60 (6th Cir.1984), this Court construed "departure" as used in Section 1105a(c) to mean a legally executed departure that does not violate due process. Therefore, to determine if Dutchievici's deportation was "legally executed," it is necessary to first review his claims in this petition. If the Court concludes that his deportation was "legally executed," INS's motion to dismiss must be granted for lack of jurisdiction under Section 1105a(c).

Dutchievici argues that his deportation order was not "legally executed" for the following reasons: (1) he should have been granted a stay upon his appeal, thus his deportation from the United States did not foreclose his right of appeal: (2) since his state court conviction has been expunged, *nunc pro tunc,* that conviction cannot be used to deport him; and (3) his motion to reopen the deportation proceedings should have been granted under Section 212(c), 8 U.S.C. § 1182(C).

INS argues that the Immigration Judge's order became final in September 1997, when Petitioner failed to appeal timely the deportation order. As to Dutchievici's criminal conviction. INS argues that the Immigration Judge properly concluded that Dutchievici's conviction was final at the time of deportation for immigration purposes and there is no showing that the state-court conviction was set aside on the merits. Finally, INS argues that Dutchievici was ineligible for Section 212(c) relief because he was never a permanent lawful resident, as required by the statute. Based on these reasons, INS submits that Dutchievici's departure from the United States was pursuant to a lawful and final order of exclusion and, therefore, his deportation was lawfully executed.

## C. Automatic Stay of deportation

██ Dutchievici argues that he was entitled to an automatic stay of his deportation given his appeal of the Immigration Judge's denial of his motion to reopen. INS contends that only discretionary stays were available to Dutchievici, which he did request, and also that given his actual deportation, his pending appeal was correctly deemed legally withdrawn.

Dutchievici relies on BIA Practice Manual 6.2 for his asserted right to an automatic stay. BIA Practice Manual 6.2 Automatic Stays provides for automatic stays on appeal, but only in the following circumstances:

(a) *Qualifying appeals.*—There are limited circumstances in which an order of removal, deportation, or exclusion is automatically stayed:

—direct appeal of an Immigration Judge's decision on the merits of the case (not including bond and custody determinations)

—appeal of an Immigration Judge's denial of a motion to reopen *deporta-*

*tion* proceedings conducted in absentia under prior section 242B of the Immigration and Nationality Act.

—the 30–day period for filing an appeal in either of these scenarios, unless the right to appeal has been waived.

When an appeal is filed, it must be timely and properly filed for an automatic stay to take effect.

There are no other instances in which an automatic stay or removal, deportation, or exclusion takes effect.

(b) *Qualifying motions.*—There are no motions that are filed with the Board that results in an automatic stay of removal, deportation, or exclusion.

(c) *Duration.*—An automatic stay of removal, deportation, or exclusion expires when the Board renders a final decision in the case. Occasionally, when the Board grants a temporary stay, the Board may vacate or dissolve the stay before reaching the merits of the appeal or motion.

BIA Practice Manual § 6.2.

The INS correctly contends that Dutchievici misreads Section 6.2 and that his motion to reopen does not fall under that section because his exclusion proceedings were not conducted in abstentia. Dutchievici's appeal falls under Section 6.3, which authorizes the Board to grant a stay as a matter of discretion only when an appeal, a motion to reopen, or a motion to reconsider is before them. Additionally, Section 6.3 requires a written request for a discretionary stay. Dutchievici did not submit a written request for a stay pending the outcome of his appeal. Finally, the BIA's manual expressly states that its provisions are "not" a "substitute for … the pertinent laws and regulations." Under 8 C.F.R. § 3.6(b) (2002), a stay of deportation upon the administrative appeal from

the denial of reopening by an Immigration Judge is only discretionary, not automatic.

Therefore, an automatic stay was inappropriate in this case under BIA Practice Manual 6.2 because Dutchievici's exclusion proceedings were not conducted in absentia. Further, 8 C.F.R § 3.6(b) supports only a discretionary stay because Dutchievici was appealing the denial of his motion to reopen. Dutchievici's ultimate mistake was his failure to submit a written request for a stay of deportation pending his appeal as required for the Board to grant a discretionary stay under Practice Manual Section 6.3.

Because the district court did not err by failing to grant a stay of deportation to Dutchievici, he was lawfully deported on November 2, 2001. Further, 8 C.F.R. § 1003.4 (2002) commands that BIA treat a pending appeal as withdrawn when the alien departs the United States prior to a decision on appeal.[4] Therefore, the BIA acted correctly under 8 C.F.R. § 1003.4 by treating Dutchievici's appeal of the denial of his motion to reopen as withdrawn based upon his departure from the United States.

### D. Expungement of Dutchievici's state conviction after his deportation

■ Dutchievici argues next that the state court order expunging his criminal conviction. *nunc pro tunc*, rendered him no longer excludable, and that his proceedings should not have been dismissed. INS submits that Dutchievici has not shown that the expungement of his criminal conviction was on the merits so as to render his departure in violation of his due process rights.

In *Estrada–Rosales*, 645 F.2d 819, 820–21 (9th Cir.1981), the deported petitioner, whose conviction was set aside on the merits, appealed the BIA's refusal to consider his petition to reopen. The Ninth Circuit held that the Board should have granted the petition and ordered petitioner readmitted to the United States for such a hearing despite the petitioner's departure from the United States. This Circuit articulated the same general principle, although on different facts. in *Juarez v. INS*, 732 F.2d 58, 60 (6th Cir.1984), by stating that "if [he] had left the United States under an order that contravened his constitutional right to due process, his departure would be no obstacle to court review of the order." Therefore, Dutchievici's deportation from the United States, if unlawful, does not bar the reopening of his exclusion proceedings.

In *In re Rodriguez–Ruiz*, 22 I & N Dec. 1378, 2000 WL 1375514 (BIA 2000), the BIA stated that a dismissal of a state conviction based on an expungement statute or a state rehabilitative statute was insufficient to terminate deportation proceedings. Thus, only an expungement of a conviction on the merits is recognized for immigration purposes.

In *Estrada*, the conviction was set aside "on the merits" by the district court. *Estrada–Rosales*, 645 F.2d at 820. The *Estrada* court noted that an alien's deportation was illegal only where the conviction was vacated on the merits, as opposed to a judicial pardon or technical expungement of the record following a probationary period. *Id.* at 821.

---

**4.** 8 CFR § 1003.4, in pertinent part, states that a "[d]eparture from the United States of a person who is the subject of deportation proceedings subsequent to the taking of an appeal, but prior to a decision thereon, shall constitute a withdrawal of the appeal, and the initial decision in the case shall be final to the same extent as though no appeal had been taken."

Dutchievici relies on *Wiedersperg v. INS,* 896 F.2d 1179 (9th Cir.1990), to support his claim that a vacated conviction may not be used against an alien as a grounds for deportation. *Wiedersperg* however, is distinguishable from the present case. In *Wiedersperg,* the alien was convicted for marijuana possession in 1968, and sought and received an expungement of his conviction in 1969. *Id.* at 1180. He was deported, based on the vacated conviction, in 1973. *Id.* In other words, Wiedersperg was deported after his conviction had been vacated. Dutchievici, by contrast, was convicted for cocaine possession in 1995 and, when he was deported in November 2001, his conviction was still valid. The state court did not expunge Dutchievici's drug conviction until December 2001. Unfortunately for Dutchievici, the state court order came too late. His conviction was final at the time that he was removed and his immigration case is now closed. The subsequent vacatur of Dutchievici's conviction has no effect on the validity of the closed proceedings.

**E. Section 212(c) waiver**

■ Dutchievici's next argument is based upon his Section 212(c) motion to reopen, which the Immigration Judge granted. INS objected that the service of process was improper; that Dutchievici misapplied the *Soriano* regulations; and that he is ineligible for Section 212(c) relief. On August 16, 2001, the Immigration Court set aside its prior order and unilaterally denied the motion to reopen.

At the time of the Dutchievici's convictions in 1994. Section 212(c) provided:

Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) of this section (other than paragraphs (3) and (9)(C)). Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 1181(b) of this title. The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years.

8 U.S.C. § 1182(c) (1994). INS argues Dutchievici was statutorily ineligible for the relief under Section 212(c) because he was never an "Alien lawfully admitted for permanent residence" as required by Section 212(c). We agree.

*In re Soriano,* 21 I & N Dec. 516, 1996 WL 426888 (BIA 1996), relied on by Dutchievici, the BIA addressed Section 440(d) of AEDPA that amended Section 212(c) of the INA. Under Section 440(d). Section 212(c) "shall not apply to an alien who is deportable by reason of having committed any criminal offense covered by section 241(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are, without regard to the date of their commission, otherwise covered by section 241(a)(2)(A)(i)." *Id.* at 518 (quoting 110 Stat. at 1277). In response to inquiries regarding the retroactivity of this rule, the *Soriano* regulations were created to allow certain aliens who were previously barred from applying for Section 212(c) relief and who were in deportation proceedings that commenced before April 24, 1996, to apply for a Section 212(c) waiver. Even though Dutchievici's exclusion proceedings commenced before April 24, 1996, the *Soriano* regulations did not change the "lawful permanent resident" requirement

of Section 212(c). Thus, the *Soriano* regulations do not apply to Dutchievici.

Therefore, the Immigration Judge's denial of Dutchievici's motion to reopen was correct. Dutchievici is ineligible for a Section 212(c) waiver because he was never a permanent United States resident.

### III. CONCLUSION

In sum, we conclude that: (1) there were no grounds for an automatic stay and the BIA acted correctly under 8 C.F.R. § 1003.4 in determining that the Petitioner's departure from the United States constituted a withdraw of his administrative appeal: (2) the state-court order expunging Dutchievici's criminal conviction did not affect his removal status because there was no showing that the expungement was on the merits of his conviction; and (3) the Immigration Judge correctly denied Petitioner's motion to reopen because the motion was untimely and Dutchievici is not statutorily eligible for a Section 212(c) waiver because he was never admitted as a lawful permanent resident.

Therefore, the Court grants INS's motion to dismiss for lack of jurisdiction over this petition because, upon the evidence in the record. Petitioner's deportation was legally executed.