*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0108p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ALEXANDER GRIGORIEVICH URITSKY,

*Petitioner,*

*v.*

No. 03-4331

ALBERTO GONZALES, Attorney General,

*Respondent.*

On Appeal from the Board of Immigration Appeals.
No. A78 652 707.

Argued: February 2, 2005

Decided and Filed: March 7, 2005

Before: NORRIS and GIBBONS, Circuit Judges; TODD, Chief District Judge.[*]

---

## COUNSEL

**ARGUED:** Richard A. Kulics, IMMIGRATION LAW CENTER, Birmingham, Michigan, for Petitioner. Norah Ascoli Schwarz, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Richard A. Kulics, IMMIGRATION LAW CENTER, Birmingham, Michigan, for Petitioner. Linda S. Wendtland, Michelle Thresher, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

## OPINION

---

ALAN E. NORRIS, Circuit Judge. Alexander Grigorievich Uritsky contests a decision of the Board of Immigration Appeals ("Board") that ordered him removed from the United States. In 2002, Uritsky pleaded guilty to one count of third degree sexual conduct in violation of Mich. Comp. Laws § 750.520d(1)(a). He received a sentence of probation and a designation of "youthful trainee" under Michigan's Holmes Youthful Trainee Act ("YTA"), Mich. Comp. Laws §§ 762.11-16. Despite his designation as a "youthful trainee," we conclude that Uritsky's "conviction" counts as an aggravated felony as defined by § 101(a)(48)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101(a)(48)(A), and he therefore is subject to removal.

---

[*]The Honorable James D. Todd, Chief United States District Judge for the Western District of Tennessee, sitting by designation.

1

**I.**

Uritsky is a native of Ukraine and a citizen of Israel. He entered the United States in 1996 as an eleven year-old, non-immigrant and became a lawful permanent resident on January 4, 2002. When he was seventeen, Uritsky had intercourse with a girl of fourteen. He subsequently pleaded guilty to third degree sexual conduct, Mich. Comp. Laws § 750.520d(1)(a), which prohibits sexual penetration of another person who is between thirteen and sixteen years old. Under Michigan law, the maximum sentence for this offense is fifteen years of imprisonment. Mich. Comp. Laws § 750.520d(2).

Judgment against Uritsky was entered on September 24, 2002, and included two years of probation, fines, and costs. The judgment also provided that "[n]o judgment of conviction is entered. The defendant is assigned to youthful trainee status[.]"

Because of this conviction the Department of Homeland Security ("DHS") served Uritsky with a Notice to Appear on November 2, 2002, which charged him with "removability" on the ground that he committed an aggravated felony offense. The INA provides, "Any alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). Among other things, the INA defines "aggravated felony" as "murder, rape, or sexual abuse of a minor." 8 U.S.C. § 1101(a)(43)(A). The same section of the INA defines "conviction" as follows:

> The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where –
>
> > **(i)** a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and
> >
> > **(ii)** the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

8 U.S.C. § 1101(a)(48)(A).

In response to the Notice to Appear, Uritsky filed a motion to terminate the proceedings, reasoning that his adjudication as a youthful trainee did not constitute an aggravated felony conviction as defined by the INA. The YTA provides that "if an individual pleads guilty to a criminal offense, committed on or after the individual's seventeenth birthday but before his or her twenty-first birthday, the court of record having jurisdiction of the criminal offense may, without entering a judgment of conviction and with the consent of that individual, consider and assign that individual to the status of youthful trainee." Mich. Comp. Laws § 762.11(1). Further, "If consideration of an individual as a youthful trainee is not terminated and the status of youthful trainee is not revoked as provided in section 12 of this chapter, upon final release of the individual from the status as youthful trainee, the court shall discharge the individual and dismiss the proceedings." Mich. Comp. Laws § 762.14(1) (footnote omitted). Moreover, "An assignment of an individual to the status of youthful trainee as provided in this chapter is not a conviction for a crime and . . . the individual assigned to the status of youthful trainee shall not suffer a civil disability or loss of right or privilege following his or her release from that status because of his or her assignment as a youthful trainee." Mich. Comp. Laws § 762.14(2).

In addition to the language of the YTA, Uritsky relied upon an opinion of the Board, *In re Miguel Devison-Charles* ("*Devison*"), 22 I&N Dec. 1362 (BIA 2000), to support his view that he had not committed the aggravated felony required by the INA to trigger removal. In *Devison*, the Board considered whether an adjudication as a "youthful offender" under the New York criminal

code could nonetheless constitute an aggravated felony conviction as defined by the INA. The Board compared the New York scheme to the Federal Juvenile Delinquency Act ("FJDA"), 18 U.S.C. §§ 5031-42, and concluded, "[T]he New York procedure under which the respondent was adjudicated a youthful offender . . . is sufficiently analogous to the procedure under the FJDA to classify that adjudication as a determination of delinquency, rather than as a conviction for a crime." *Devison* at 1367. In its reasoning, the Board drew a critical distinction between a finding of delinquency, which involves "status" rather than guilt or innocence, and deferred adjudication or expungement. *Id.* at 1371. Deferred adjudications constitute convictions under the INA while findings of delinquency do not:

> [J]uvenile delinquency and youthful offender adjudications are not akin to expungement or deferred adjudication procedures. Under the former, proceedings are civil in nature and the adjudication of a person determined to be a juvenile delinquent or youthful offender is not a conviction ab initio, nor can it ripen into a conviction at a later date. In the case of an expungement or deferred adjudication, the judgment in the criminal proceeding either starts out as a "conviction" that can be "expunged" upon satisfactory completion of terms of punishment and petition to the court, or as a judgment that is deferred pending similar satisfaction of conditions of punishment. In either case, however, neither expungement nor deferral can be presumed, and the original judgment of guilt may remain, or ripen into, a "conviction" under state law. This is a dispositive difference, because a juvenile adjudication cannot become a conviction based on the occurrence or nonoccurrence of subsequent events. To eliminate these distinctions and overrule our well-established precedents on these issues, we would require clearer direction from Congress that it intended juvenile adjudications to be treated as convictions for immigration purposes.

*Id.* at 1371-72 (footnote omitted). In short, the instant case requires us to determine whether the Michigan YTA is closer to a deferred adjudication, in which case Uritsky is subject to removal, or to a finding of delinquency.

The immigration judge determined that the Michigan scheme constituted a finding of delinquency as defined by *Devison* and terminated proceedings. The Board reversed based on the following rationale:

> We agree with the DHS that the respondent has been convicted for immigration purposes. In *Matter of Devison, supra*, we found that an adjudication of youthful offender status pursuant to N.Y. Crim. Pro. Law § 720 does not constitute a conviction under section 101(a)(48)(A) of the Act because it is analogous to a determination of juvenile delinquency under the Federal Juvenile Delinquency Act, 18 U.S.C. §§ 50131-5042 ("FJDA"), in several ways, the most notable being that, once an individual is determined to be a youthful offender under New York law, his or her conviction is vacated. Because the vacation of the conviction does not depend on the individual's future good behavior, we found that the adjudication is not an expungement or other rehabilitative act. Moreover, we concluded that a youthful offender adjudication does not, in fact, fit within the scope of the definition of the term "conviction" contained in section 101(a)(48)(A) of the Act.
>
> In the present case, the respondent was sentenced as a youthful trainee under MCL § 762.11 et seq. for his offense of criminal sexual conduct in the third degree. The respondent claims that MCL § 762.11 is analogous to the FJDA and New York law, but we disagree. As the DHS has explained, a criminal action against an individual is not completely vacated under Michigan law until an individual

completes his or her probation or sentence. And a judge may revoke the youthful trainee status at any time. These distinctions between the Michigan youthful trainee program and the FJDA are significant and make the Michigan program more analogous to a rehabilitative expungement than an adjudication of juvenile delinquency. We therefore agree with the DHS that the grant of youthful trainee status in the respondent's case qualifies as a conviction under section 101(a)(48)(A) of the Act.

Decision of the Board of Immigration Appeals, Oct. 6, 2003 at 2 (citations omitted). The Board ordered Uritsky removed from the United States but remanded the matter to allow him to choose a country for removal.

## II.

*Standard of Review*

To the extent that this appeal involves statutory construction of the INA, we accord the DHS deference. *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424-25 (1999). In *Aguirre-Aguirre*, the Court reviewed the manner in which the agency construed the INA's definition of the term "serious nonpolitical crime." In reaching its decision, the Court faulted the Ninth Circuit, which had reversed the Board, for not according the Board the proper deference in construing the INA:

Because the Court of Appeals confronted questions implicating "an agency's construction of the statute which it administers," the court should have applied the principles of deference described in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Thus, the court should have asked whether "the statute is silent or ambiguous with respect to the specific issue" before it; if so, "the question for the court [was] whether the agency's answer is based on a permissible construction of the statute." *Id.*, at 843, 104 S.Ct. 2778. *See also INS v. Cardoza-Fonseca*, 480 U.S., at 448-449, 107 S.Ct. 1207.

It is clear that principles of *Chevron* deference are applicable to this statutory scheme. The INA provides that "[t]he Attorney General shall be charged with the administration and enforcement" of the statute and that the "determination and ruling by the Attorney General with respect to all questions of law shall be controlling." 8 U.S.C. § 1103(a)(1) (1994 ed., Supp. III). Section 1253(h), moreover, in express terms confers decisionmaking authority on the Attorney General, making an alien's entitlement to withholding turn on the Attorney General's "determin[ation]" whether the statutory conditions for withholding have been met. 8 U.S.C. §§ 1253(h)(1), (2). In addition, we have recognized that judicial deference to the Executive Branch is especially appropriate in the immigration context where officials "exercise especially sensitive political functions that implicate questions of foreign relations." *INS v. Abudu*, 485 U.S. 94, 110, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988).

*Aguirre-Aguirre*, 526 U.S. at 424-25. With this admonition in mind, we turn to the sections of the INA crucial to this appeal.

*Evolution of the Term "Conviction" in the Immigration Context*

The statutory definition of conviction found at 8 U.S.C. § 1101(a)(48)(A) was added to the INA in 1996. Before that, the Board had attempted to provide a uniform definition of the term in *Matter of Ozkok*, 19 I&N Dec. 546 (BIA 1988). In *Ozkok*, the Board surveyed its struggle to determine "what state action constitutes a conviction with sufficient finality for purposes of the

immigration laws." *Id.* at 548. After observing that "most states now employ some method of ameliorating the consequences of a conviction," including some that apply only to youthful offenders, the Board concluded that it was irrational to treat aliens differently simply because of slight differences among the criminal codes of the various states. *Id.* at 550-51. It therefore proposed the following definition for those aliens who have been subject to criminal proceedings but who have yet to have a formal judgment of guilt entered against them:

> Where adjudication of guilt has been withheld . . . further examination of the specific procedure used and the state authority under which the court acted will be necessary. As a general rule, a conviction will be found for immigration purposes where all of the following elements are present:
>
>> (1) a judge or jury has found the alien guilty or he has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilty;
>>
>> (2) the judge has ordered some form of punishment, penalty, or restraint on the person's liberty to be imposed (including but not limited to incarceration, probation, a fine or restitution, or community-based sanctions such as a rehabilitation program, a work-release or study-release program, revocation or suspension of a driver's license, deprivation of nonessential activities or privileges, or community service); and
>>
>> (3) a judgment or adjudication of guilt may be entered if the person violates the terms of his probation or fails to comply with the requirements of the court's order, without availability of further proceedings regarding the person's guilt or innocence of the original charge.

*Id.* at 551-52 (footnote omitted).

Congress amended the INA significantly with the passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. The House Conference Report, H.R. Conf. Rep. 104-828 (1996), provides the following reasoning for modifying the definition of conviction articulated in *Matter of Ozkok*:

> This section deliberately broadens the scope of the definition of "conviction" beyond that adopted by the Board of Immigration Appeals in *Matter of Ozkok*, 19 I&N Dec. 546 (BIA 1988). As the Board noted in *Ozkok*, there exist in the various States a myriad of provisions for ameliorating the effects of a conviction. As a result, aliens who have clearly been guilty of criminal behavior and whom Congress intended to be considered "convicted" have escaped the immigration consequences normally attendant upon a conviction. *Ozkok*, while making it more difficult for alien criminals to escape such consequences, does not go far enough to address situations where a judgment of guilt or imposition of sentence is suspended, conditioned upon the alien's future good behavior. For example, the third prong of *Ozkok* requires that a judgment or adjudication of guilt may be entered if the alien violates a term or condition of probation, without the need for any further proceedings regarding guilt or innocence on the original charge. In some States, adjudication may be "deferred" upon a finding or confession of guilt, and a final judgment of guilt may not be imposed if the alien violates probation until there is an additional proceeding regarding the alien's guilt or innocence. In such cases, the third prong of the *Ozkok*

definition prevents the original finding or confession of guilt to be considered a "conviction" for deportation purposes. *This new provision, by removing the third prong of* Ozkok, *clarifies Congressional intent that even in cases where adjudication is "deferred," the original finding or confession of guilt is sufficient to establish a "conviction" for purposes of the immigration laws.* In addition, this new definition clarifies that in cases where immigration consequences attach depending upon the length of a term of sentence, any court-ordered sentence is considered to be "actually imposed," including where the court has suspended the imposition of the sentence. The purpose of this provision is to overturn current administrative rulings holding that a sentence is not "actually imposed" in such cases.

*Id.* at 224 ("Joint Explanatory Statement") (emphasis added).

This new definition was construed shortly after its enactment by an en banc panel of the Board. *In re Mauro Roldan-Santoyo ("Roldan")*, 22 I&N Dec. 512 (BIA 1999). The Board took a restrictive view of how an expungement affects whether an alien was "convicted" as defined by 8 U.S.C. § 1101(a)(48)(A):

> We . . . find it significant that, under the new definition, an alien is considered convicted for immigration purposes despite the fact that further proceedings addressing the merits of the original charge might be required before the state would consider him convicted. It would be incongruous for us to interpret the definition to allow an alien, who during the entire period of his probation would have been considered convicted for immigration purposes, to be relieved of the immigration consequences of his misconduct as of the date of a subsequent rehabilitative state action having absolutely no relation to the merits of the charge. Congress has focused on the original determination of guilt and has expressed clear disinterest regarding subsequent state rehabilitative measures. We therefore interpret the new definition to provide that an alien is considered convicted for immigration purposes upon the initial satisfaction of the requirements of section 101(a)(48)(A) of the Act, and that he remains convicted notwithstanding a subsequent state action purporting to erase all evidence of the original determination of guilt through a rehabilitative procedure.

*Id.* at 523.

After *Roldan*, however, the Board decided *Devison, supra,* and carved out the distinction already discussed: while deferred adjudications, such as an expungement, remain convictions even though they might apply to youthful offenders, findings of delinquency do not because they assign the offender a particular status that cannot be revoked. *Devison* at 1371-72.

*Application of the Definition to Uritsky*

The Michigan YTA permits trial courts to assign individuals between the ages of 17 and 20 who plead guilty to a criminal offense to youthful trainee status. Mich. Comp. Laws § 762.11. In such cases, the trial court does not enter a judgment of conviction. However, while the individual is serving his probationary sentence as a youthful trainee, the court retains discretion to "revoke that status at any time . . . [and] enter an adjudication of guilt and proceed as provided by law." Mich. Comp. Laws § 762.12. Further, "If the status of youthful trainee is revoked, an adjudication of guilt is entered, and a sentence is imposed . . . ." *Id.* Assuming that the probationary period is served without incident, "upon final release of the individual from the status of youthful trainee, the court shall discharge the individual and dismiss the proceedings." Mich. Comp. Laws § 762.14(1).

Uritsky argues that the only difference between the New York statute construed by *Devison* and the Michigan YTA is that the latter permits revocation of youthful trainee status while the

former does not. However, both statutes deal with the same age group, reflect a similar legislative intent to give young offenders a second chance to avoid the stigma of criminal conviction, and promote rehabilitation over punishment. According to Uritsky, this procedural difference is not enough to justify varying applications of the INA based solely on one's state of residence. Because the Board failed to articulate a rational basis for such disparate application, Uritsky continues, its order of removal violated his right to equal protection and must be vacated.

We are not unsympathetic to Uritsky's position. The two statutes evince a similar underlying purpose and the distinction drawn by the Board may seem to some to be less than compelling, particularly in light of the serious consequences that potentially flow from the distinction: in this case, the removal of Uritsky from the United States.

Bearing in mind that we must accord *Chevron* deference to the DHS's construction of the statute, we start our inquiry with reference to the plain language of the INA, specifically its definition of "conviction." First, the alien must have "entered a plea of guilty" as Uritsky did to the charge of third degree sexual conduct. 8 U.S.C. § 1101(a)(48)(A)(i). Second, the court must have imposed "some form of punishment, penalty, or restraint on the alien's liberty[.]" 8 U.S.C. § 1101(a)(48)(A)(ii). Uritsky's plea and disposition under the YTA satisfies both requirements. *See Gill v. Ashcroft*, 335 F.3d 574, 576 (7th Cir. 2003) ("Gill's plea of guilty satisfies part (i) of this definition, and the term of probation satisfies part (ii)").

Furthermore, the Board's reasoning in *Devison, supra,* reflected Congressional intent with respect to juvenile adjudications and the INA. The Board accepted the longstanding view that juvenile delinquency proceedings are not criminal proceedings for immigration purposes. *Devison* at 1365. However, the Board also recognized that there is an intermediate realm between juvenile proceedings, which typically apply to offenders sixteen years old or younger, and "youthful offender adjudications," which affect those who commit crimes between ages seventeen and twenty. When determining whether youthful offender adjudications in New York represent "convictions" under the INA, the Board reasonably compared the New York statute to its federal counterpart. Relying upon the distinctions drawn in *Roldan, supra,* it concluded that Congress, in enacting 8 U.S.C. § 1101(a)(48)(A), did not intend to bring findings of juvenile delinquency under the definition of "conviction," but did intend that proceedings akin to expungement or deferred adjudications should count. *Devison* at 1371-72. This distinction has been endorsed by other circuits. *See, e.g.., Acosta v. Ashcroft*, 341 F.3d 218, 223 (3d Cir. 2003) (offender "convicted" even when charges ultimately dismissed without an adjudication of guilt after successful completion of probation).

Turning to the instant case, the Board's decision represented a reasonable application of *Devison* and *Roldan* to the Michigan YTA. Assuming that the distinction between revocable adjudications, such as those made pursuant to the YTA, and irrevocable "status" findings of delinquency is valid, the Board's conclusion that youthful trainee designations in Michigan represent convictions for immigration purposes represents the kind of "permissible construction" of the INA sanctioned by *Chevron*.

Because the Michigan statute can be distinguished from its New York and federal counterparts, Uritsky's equal protection claim fails. The distinction drawn by the Board has a "rational basis," which is all that is required for it to pass constitutional muster. *Ashki v. INS*, 233 F.3d 913, 920 (6th Cir. 2000). "Under rational basis scrutiny, a statute is 'accorded a strong presumption of validity' and will be upheld if 'any reasonably conceivable state of facts' could demonstrate that the statute is rationally related to a legitimate government purpose." *Id.* (citing *Heller v. Doe*, 509 U.S. 312, 319-20 (1993)). Simply because states take different approaches to criminal sanctions does not mean that the Board must construe "conviction" in the broadest possible manner in order to avoid claims of equal protection.

For these reasons, we hold that, despite Uritsky's designation as a "youthful trainee," his plea of guilty to third degree sexual conduct constitutes a "conviction" as that term is defined by the INA.

## III.

The Order of the Board dated October 3, 2003 is **affirmed**.