NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0355n.06

No. 08-3124

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED
May 20, 2009
LEONARD GREEN, Clerk**

| | |
|---|---|
| ALEXANDER GRIGORIEVICH URITSKY, ) | |
| ) | |
| Petitioner, ) | ON PETITION FOR REVIEW |
| ) | OF AN ORDER OF THE BOARD |
| v. ) | OF IMMIGRATION APPEALS |
| ) | |
| ERIC H. HOLDER, JR.,* ) | **O P I N I O N** |
| Attorney General of the United States, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

**Before: MOORE and WHITE, Circuit Judges, and OLIVER, District Judge.**

**WHITE, Circuit Judge.** Petitioner Alexander Uritsky seeks review of the January 2, 2008 order of the Board of Immigration Appeals (BIA) denying his motion to reopen immigration proceedings. We DISMISS the petition for review in part for lack of jurisdiction and otherwise DENY the petition.

---

*Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Eric H. Holder, Jr. is automatically substituted for former Attorney General Michael B. Mukasey as Respondent in this case.

**The Honorable Solomon Oliver, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

# I

The facts are not in dispute. Uritsky, a native of Ukraine and citizen of Israel, was admitted to the United States in 1996 at the age of eleven and became a lawful permanent resident on January 4, 2002. When he was seventeen, he had intercourse with a fourteen year-old girl. He eventually pleaded guilty to the felony charge of third-degree sexual conduct, Mich. Comp. Laws § 750.520d(1)(a), which prohibits engaging in sexual penetration with a person who is at least thirteen and less than sixteen years old. *See Uritsky v. Gonzales*, 399 F.3d 728, 729 (6th Cir. 2005). Judgment against Uritsky was entered on September 24, 2002, and Uritsky was assigned to "youthful trainee status" under the Holmes Youthful Trainee Act, Mich. Comp. Laws §§ 762.11-16. *Uritsky*, 399 F.3d at 729.

On November 2, 2002, the Department of Homeland Security served Uritsky with a Notice to Appear, charging him with having been convicted of an aggravated felony and thus subject to removal pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). Uritsky filed a motion to terminate the removal proceedings, arguing that his adjudication as a "youthful trainee" did not constitute an aggravated felony conviction under the Immigration and Nationality Act (INA). *Uritsky*, 399 F.3d at 730. The Immigration Judge agreed and terminated the removal proceedings. The Department of Homeland Security (DHS) appealed this ruling, and on October 6, 2003, the BIA sustained the appeal, ordering that Uritsky be removed and allowing Uritsky the opportunity to choose a country for removal. Uritsky designated Israel (or, as an alternative, Ukraine) as the country of removal. He also petitioned this court for review of the BIA's decision. On March 7, 2005, we affirmed the BIA's decision, ruling that Uritsky's guilty plea to third-degree sexual conduct constituted a "conviction" under the INA notwithstanding his assigned status as a "youthful trainee." *See id.* at 728. Uritsky

filed a petition for writ of certiorari, which the Supreme Court denied on October 3, 2005. *Uritsky v. Gonzales*, 546 U.S. 823 (2005).

On June 22, 2005, while the petition for certiorari was pending, a Michigan circuit court ordered that Uritsky's conviction of third-degree sexual conduct be set aside based on a stipulation signed by both the prosecution and Uritsky's attorney that there was a "defect in the plea proceeding" that entitled Uritsky to relief under subchapter 6.500 of the Michigan Court Rules.[1] Nevertheless, Uritsky was removed from the United States in February 2006. Nothing in the record indicates that Uritsky notified the immigration authorities before he was removed that his felony conviction had been vacated, nor is there any indication that the immigration authorities were already aware of this pertinent fact.

On July 3, 2007, Uritsky filed a motion to reopen with the BIA. Uritsky contended that his removal was not legally executed because it was based on a conviction that was no longer valid. This, according to Uritsky, allowed the BIA to grant the motion to reopen despite the fact that he had already been removed. Uritsky also requested that the BIA exercise its power to reopen his case *sua sponte*, maintaining his removal "for a crime he has not been convicted of" was a "gross miscarriage of justice" and constituted an "exceptional circumstance" meriting such a reopening.

The Government opposed Uritsky's motion. On January 2, 2008, the BIA denied Uritsky's motion in a written order, stating "[t]he motion will be denied because it was not filed within the statutory and regulatory 90-day time limit for filing a motion to reopen," as "[a] final administrative

---

[1] It appears that as part of the stipulation described above, Uritsky pleaded guilty to one count of attempted aggravated assault, Mich. Comp. Laws §§ 750.81a & 750.92, a misdemeanor.

order was entered in this case on October 6, 2003, and this motion was filed more than three years later." J.A. 5 (citing 8 U.S.C. § 1229a(c)(7)(C)(i) and 8 C.F.R. § 1003.2(c)(2)).

The motion was "also denied" on the ground that it was filed after Uritsky had been removed from the United States. *Id.* (citing 8 C.F.R. § 1003.2(d)). The BIA disagreed with Uritsky's claim that he was unlawfully removed, noting that he "had over seven months" before he was removed "to notify or inform the DHS or this Board that his aggravated felony conviction had been vacated," yet "he did nothing." *Id.* The BIA observed there was no evidence that immigration authorities were even aware of the state court's order vacating Uritsky's conviction.

Finally, the BIA found that no exceptional circumstances existed that would warrant a *sua sponte* reopening. It cited its previous ruling that its power to reopen or reconsider cases *sua sponte* is "limited to exceptional circumstances and is not meant to cure filing defects or circumvent the regulations, where enforcing them might result in hardship." *Id.* (quoting the summary of the decision in *In re J-J*, 21 I&N Dec. 976 (BIA 1997)). The BIA found that Uritsky "failed to exercise due diligence in this case," as he did not inform the DHS or the BIA that his conviction had been vacated before he was removed, and that he "fails to provide any explanation for the untimeliness of this motion which was filed more than three years after the issuance of our prior decision and more than one year after his removal." *Id.*

Uritsky filed a timely notice of petition for review with this court. We have jurisdiction under 8 U.S.C. § 1252.

## II

We review the denial of a motion to reopen for an abuse of discretion. *Tapia-Martinez v. Gonzales*, 482 F.3d 417, 421 (6th Cir. 2007). Issues of law are reviewed de novo. *Id.* "The

4

Supreme Court has made clear that reopening is discretionary with the BIA and that the BIA retains broad discretion to grant or deny such motions. Because the BIA has such broad discretion, a party seeking reopening or reconsideration bears a 'heavy burden.'" *Alizoti v. Gonzales*, 477 F.3d 448, 451 (6th Cir. 2007) (citing *INS v. Doherty*, 502 U.S. 314, 323 (1992)); *see also Daneshvar v. Ashcroft*, 355 F.3d 615, 625 (6th Cir. 2004) (noting the BIA's discretion "is broad but is not unlimited"). "The BIA abuses its discretion when it acts arbitrarily, irrationally or contrary to law." *Sswajje v. Ashcroft*, 350 F.3d 528, 532 (6th Cir. 2003). In determining whether an abuse of discretion occurred, we must decide whether the denial of the motion to reopen "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005) (quotation marks omitted).

**A**

A party must generally file a motion to reopen "within 90 days of the date of entry of a final administrative order of removal." 8 U.S.C. § 1229a(c)(7)(C)(i); *see also* 8 C.F.R. § 1003.2(c)(2). "The time limits for filing a motion to reopen 'are crystal clear.'" *Barry v. Mukasey*, 524 F.3d 721, 723 (6th Cir. 2008) (quoting *Randhawa v. Gonzales*, 474 F.3d 918, 920 (6th Cir. 2007)). Further, "[a]n alien is generally precluded . . . from filing a motion to reopen his or her deportation proceedings once the alien has left the country." *Mansour v. Gonzales*, 470 F.3d 1194, 1198 (6th Cir. 2006); *see* 8 C.F.R. § 1003.2(d) ("A motion to reopen . . . shall not be made by or on behalf of a person who is the subject of exclusion, deportation, or removal proceedings subsequent to his or

5

her departure from the United States.").[2] Uritsky concedes that his motion to reopen was filed after the 90-day time limitation had run. Nevertheless, he contends that his removal was not "legally executed" because the felony conviction on which his removal was based was vacated, and thus neither the usual time limit on motions to reopen nor the departure bar should have been applied.

We need not address Uritsky's argument that the BIA erred when it ruled that his departure from the United States barred his subsequent motion to reopen. The BIA's decision was independently grounded on Uritsky's failure to file his motion to reopen within the 90-day period allowed for such motions. Uritsky relies heavily on the Ninth Circuit case of *Wiedersperg v. INS*, 896 F.2d 1179 (9th Cir. 1990).[3] However, *Wiedersperg* was decided in 1990, when there were no statutory or regulatory time limits for requesting the reopening of a case. As the Supreme Court recently recounted,

> in 1990, "fear[ful] that deportable or excludable aliens [were] try[ing] to prolong their stays in the U.S. by filing one type of discretionary relief . . . after another in immigration proceedings," Justice Dept. Finds Aliens Not Abusing Requests for Relief, 68 No. 27 Interpreter Releases 907 (July 22, 1991), Congress ordered the Attorney General to "issue regulations with respect to . . . the period of time in which motions to reopen . . . may be offered in deportation proceedings," including "a

---

[2] *But see William v. Gonzales*, 499 F.3d 329, 332 (4th Cir. 2007) (2-1 decision) (holding that 8 C.F.R. § 1003.2(d) is invalid because it conflicts with the statutory language in 8 U.S.C. § 1229a(c)(7)(A) providing that "[a]n alien may file one motion to reopen proceedings under this section," as such language "unambiguously provides an alien with the right to file one motion to reopen, regardless of whether he is within or without the country").

[3] In *Wiedersperg*, the Ninth Circuit granted a petition for review of the BIA's denial of a motion to reopen, which was filed after the petitioner had been deported, because the state conviction underlying his deportation had been vacated. *See Wiedersperg*, 896 F.2d at 1180-82.
It is worth noting that our observation in a prior unpublished opinion that "Wiedersperg was deported *after* his conviction had been vacated," *Dutchievici v. INS*, 90 F. App'x 126, 133 (6th Cir. 2004) (emphasis added), was mistaken. In fact, the "expungement" of Wiedersperg's conviction pursuant to state law occurred prior to his deportation, but the conviction was "vacated" only after he had been deported. *See Wiedersperg*, 896 F.2d at 1180.

6

limitation on the number of such motions that may be filed and a maximum time period for the filing of such motions," § 545(d)(1), 104 Stat. 5066. The Attorney General found little evidence of abuse, concluding that requirements for reopening are a disincentive to bad faith filings. See 68 Interpreter Releases, *supra*. Because "Congress . . . neither rescinded [n]or amended its mandate to limit the number and time frames of motions," however, the Department of Justice (DOJ) issued a regulation imposing new time limits and restrictions on filings. The new regulation allowed the alien to file one motion to reopen within 90 days. Executive Office for Immigration Review; Motions and Appeals in Immigration Proceedings, 61 Fed. Reg. 18900, 18901, 18905 (1996); see 8 CFR § 3.2(c) (1996).

With the 1996 enactment of the [Illegal Immigration Reform and Immigrant Responsibility Act], Congress adopted the recommendations of the DOJ with respect to numerical and time limits.

*Dada v. Mukasey*, 128 S. Ct. 2307, 2315 (2008). The 90-day time limit for motions to reopen was in effect at all times pertinent to Uritsky's case. Because we are reviewing the denial of his motion to reopen on the basis of untimeliness, *Wiedersperg* is inapplicable.

Uritsky filed his motion to reopen too late. As the BIA observed, "[a] final administrative order was entered in this case on October 6, 2003, and this motion was filed more than three years later." Indeed, Uritsky filed his motion over two years after his felony conviction was vacated and over sixteen months after he was removed from the United States. Uritsky did not provide any explanation to the BIA for his delay, nor does he do so in his petition for review. While equitable tolling can salvage a petitioner's otherwise time-barred motion to reopen, *see Harchenko v. INS*, 379 F.3d 405, 409-410 (6th Cir. 2004), Uritsky has made no such argument.[4] Accordingly, the BIA's denial of his motion to reopen as untimely was not an abuse of discretion.

**B**

---

[4]Such an argument would have been difficult to make because it would have required a demonstration that he exercised due diligence. *See Barry*, 524 F.3d at 724. According to the BIA, Uritsky "failed to exercise due diligence in this case," a conclusion with which it is difficult to differ.

Uritsky further argues that the BIA abused its discretion by declining to reopen his immigration proceedings *sua sponte* under 8 C.F.R. § 1003.2(a), which provides that the BIA "may at any time reopen or reconsider on its own motion any case in which it has rendered a decision." Uritsky points to *In re Sorokin*, 2007 WL 1520791 (BIA May 11, 2007), an unpublished *per curiam* order that granted an untimely motion to reopen *sua sponte* because the respondent's guilty plea and conviction, which were the basis for removability, were vacated and no longer valid for immigration purposes, and thus the respondent demonstrated "exceptional circumstances."[5] This decision, Uritsky contends, amounts to a BIA policy from which it irrationally departed in his case.

In the instant case, the BIA found that Uritsky "failed to present exceptional circumstances warranting *sua sponte* reopening." Even assuming he had demonstrated such circumstances, section 1003.2(a) merely "allows the BIA to reopen proceedings in exceptional situations; it does not require the BIA to do so." *Harchenko*, 379 F.3d at 411. We have previously held that this court "lacks jurisdiction to find that the BIA abused its discretion by failing to exercise its discretionary authority

---

[5]Requesting that the BIA exercise its *sua sponte* authority is precisely the route one of our sister circuits recently suggested to a petitioner who claimed a conviction was no longer valid for immigration purposes but whose motion to reopen would be untimely. *See Toledo-Hernandez v. Mukasey*, 521 F.3d 332 (5th Cir. 2008). In that case, the conviction underlying the petitioner's removal was vacated (on the ground that his guilty plea was not knowing and voluntary) approximately four months after the expiration of the 90-day period for filing a motion to reopen. *Id.* at 334 & n.1. One week after his conviction was vacated, the petitioner filed a petition in federal court; he did this rather than first raise the question of the continuing validity of his conviction before the BIA in a motion to reopen because he was mindful of the 90-day deadline for such motions and knew "it was impossible for him to file a motion to reopen within the requisite time frame." *Id.* at 334. However, the Fifth Circuit dismissed the petition, reminding the petitioner that "notwithstanding the untimeliness of a motion to reopen, a petitioner may nevertheless request that the BIA exercise its *sua sponte* power to reopen a case where exceptional circumstances are present." *Id.* at 333, 335. Indeed, the court pointed out, "the BIA has shown a willingness to *sua sponte* reopen cases where there is evidence that an immigrant's conviction was vacated for substantive or procedural defects." *Id.* at 335 n.2 (collecting BIA decisions, including *In re Sorokin*).

8

to reopen [a petitioner]'s proceedings. . . . The decision whether to invoke *sua sponte* authority is committed to the unfettered discretion of the BIA . . . [and is] not subject to judicial review." *Id.* at 410-11 (citations and quotation marks omitted); *see also Barry*, 524 F.3d at 724 (observing that "Sixth Circuit law is clear" that we lack jurisdiction to review a decision by the BIA not to exercise its *sua sponte* authority "irrespective of whether that decision was proper"). Thus, we must dismiss the petition for lack of jurisdiction insofar as it requests that this court review the BIA's failure to exercise its *sua sponte* authority. *See Barry*, 524 F.3d at 726.

**III**

For the reasons stated above, we DISMISS the petition for review insofar as we lack jurisdiction to review the BIA's failure to exercise its *sua sponte* authority and otherwise DENY the petition.